NO. 07-03-0139-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MARCH 21, 2005



______________________________




MICHAEL W. BROWN, APPELLANT



V.



JANIE COCKRELL, ET AL., APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NO. 90,609-B; HONORABLE JOHN B. BOARD, JUDGE



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION



 Appellant Michael W. Brown, a prison inmate acting pro se, filed a complaint alleging
that Ninfa Islas, an employee of the Texas Department of Criminal Justice, wrongfully
confiscated and converted postage stamps belonging to Brown having a value of $15.13,
and further alleging that Islas and Chris Wieck, also a TDCJ employee, misused a State
form by not ensuring that two correctional guards witnessed the inventorying of his
property. Brown's complaint also names Janie Cockrell, Director of the Texas Department
of Criminal Justice, alleging she has failed to provide a procedure whereby prisoners can
gather evidence to substantiate claims against prison guards. With the complaint, Brown
filed an affidavit of inability to pay costs. The trial court dismissed the suit before service
of process pursuant to Chapter 14 of the Civil Practice and Remedies Code. See Tex. Civ.
Prac. & Rem. Code Ann. § 14.003(a)-(b) (Vernon 2002). Brown appeals the dismissal. We
affirm the trial court's order.

 When an inmate files a lawsuit and an affidavit of inability to pay costs, the suit may
be dismissed if the court finds it is frivolous or malicious. Tex. Civ. Prac. & Rem. Code Ann.
§ 14.002. In determining whether a claim is frivolous or malicious, the court may consider
whether it has no arguable basis in law. Id., § 14.003(b)(2). Trial courts have broad
discretion to determine whether a case should be dismissed under Chapter 14. Retzlaff
v. Texas Dep't of Criminal Justice, 94 S.W.3d 650, 653 (Tex.App.-Houston [14th Dist.]
2002, pet. denied); Montana v. Patterson, 894 S.W.2d 812, 814-15 (Tex.App.-Tyler 1994,
no writ). We will not interfere with the exercise of that discretion absent proof the trial court
abused its discretion, acting arbitrarily or unreasonably in light of all the circumstances in
the case, without reference to any guiding rules and principles. Lewis v. Johnson, 97
S.W.3d 885, 886-87 (Tex.App.-Corpus Christi 2003, no pet.). 

 The Texas Department of Criminal Justice-Institutional Division is a governmental
unit of the State of Texas. See Tex. Civ. Prac. & Rem. Code Ann. §101.001(3)(A) (Vernon
Supp. 2004). In Texas, a governmental unit is immune from suit and liability unless the
State consents. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003);
Tex. Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001). Governmental
immunity from suit defeats a court's subject matter jurisdiction. Whitley, 104 S.W.3d at 542.
In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's
jurisdiction by alleging a valid waiver of immunity. Id. 

 Although appellant's petition does not specifically state whether his claims against
Islas and Wieck are brought in their individual or official capacities, it does identify them as
correctional officers and guards, and suggests the actions of which he complains were
taken in the course of their employment. Suits against government employees in their
official capacity are in fact claims against the government. Ware v. Miller, 82 S.W.3d 795,
800 (Tex.App.-Amarillo 2002, pet. denied); Friona Indep. Sch. Dist. v. King, 15 S.W.3d
653, 657 n.3 (Tex.App.-Amarillo 2000, no pet.). See Brandon v. Holt, 469 U.S. 464, 471
(1985). 

 Brown's claim of misuse of a State form and references to the Texas Tort Claims Act
indicate he is attempting to allege that the officers' use of tangible personal property caused
him personal injury, thereby placing his claim within the Tort Claims Act's waiver of the
State's immunity from suit. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon
1997). Although the paper on which a form is printed is tangible, Brown's claim that he lost
his postage stamps because State employees misused the form by failing to ensure that
it was completed correctly does not fall within the Tort Claims Act's waiver of immunity for
at least two reasons. First, the substance of Brown's complaint is that guards did not
witness the inventory of his property, permitting his stamps to be confiscated improperly. 
The loss of the stamps was not "caused by" the use of the tangible form. See University
of Tex. Med. Branch v. York, 871 S.W.2d 175, 178-79 (Tex. 1994); Russell v. Texas Dep't
of Human Resources, 746 S.W.2d 510, 513 (Tex.App.-Texarkana 1988, writ denied). 
Second, section 101.021(2) of the Tort Claims Act waives immunity with respect to claims
for personal injury and death. Brown's complaint involves loss of property.

 To the extent Brown's complaint simply seeks recovery for the confiscation of his
stamps, we note that this court, among others, has applied the doctrine of de minimis non
curiat lex to affirm the dismissal as frivolous of suits brought by inmates over the claimed
confiscation by prison employees of property having insignificant value. See Hammonds
v. Camp, 2004 WL 769373, at *2 (Tex.App.-Amarillo April 12, 2004, no pet.); Smith v.
Velasquez, 1995 WL 217206, at *3 (Tex.App.-Houston [1st Dist.] April 13, 1995, writ
denied), cert. denied, 516 U.S. 1054, 116 S. Ct. 725, 133 L. Ed. 2d 677 (1996); Smith v.
Stevens, 822 S.W.2d 152 (Tex.App.-Houston [1st Dist.] 1991, writ denied). See also
Thompson v. Mannix, 814 S.W.2d 811, 812 (Tex.App.-Waco 1991, no writ) (finding trial
court could have invoked doctrine). 

 Further, where the purpose of a proceeding against state officials is to control an
action of the State or subject it to liability, it is a suit against the State within the rule of
immunity of the State from suit. Griffin v. Hawn, 161 Tex. 422, 424, 341 S.W.2d 151, 152
(1960). The trial court reasonably could have concluded that Brown's claims asserted
against the director of the TDCJ, complaining of her failure to adopt or implement policies
and procedures, fall in that category. There is nothing in Brown's pleadings to indicate that
a waiver of immunity or legislative consent applies to his complaint against the director. See
generally Tex. Civ. Prac. & Rem. Code Ann. § 107.001-.002. Without a waiver of immunity
or legislative consent, the trial court lacked subject matter jurisdiction to hear the suit and
did not abuse its discretion in dismissing it. 

 Finding the trial court's dismissal of appellant's suit was not an abuse of its
discretion, we affirm its order.


 James T. Campbell

 Justice




 



d the state cannot be a proper party to sue, trial courts have no jurisdiction and
such suits may only be maintained against the individuals who were alleged to have acted
unlawfully. Id. at 585. Rao also cites cases such as Turner v. Texas Dept. of Mental
Health & Mental Retardation, 920 S.W.2d 415, 419 (Tex. App.-Austin 1996, writ denied);
Dillard v. Austin Indep. School Dist., 806 S.W.2d 589, 598 (Tex. App.-Austin 1991, writ
denied); and Battleship Texas Advisory Board v. Texas Dynamics, Inc., 737 S.W.2d 414,
418 (Tex. App.-Houston [14th Dist.] 1987, writ dism'd w.o.j), which cite and rely upon Bagg
in arriving at similar holdings.

 However, in City of Beaumont v. Bouillion, 896 S.W.2d 143 (Tex. 1995), the Texas
Supreme Court had occasion to consider whether there was an implied cause of action for
damages as a remedy for unconstitutional conduct under the free speech and free
assembly clauses of the Texas Constitution. In the course of its opinion, it performed an
historical analysis of such constitutional questions and concluded that although no such
actions for damages may be maintained, aggrieved persons may assert direct claims for
equitable relief against governmental entities for violations of the Texas Bill of Rights. Id.
at 149. Earlier, in Director of Dept. of Agriculture & Environment v. Printing Industries
Ass'n, 600 S.W.2d 264 (Tex. 1980), the court opined that an entity or person whose rights
have been violated by the unlawful action of a state official might bring a suit to remedy
the violation or prevent its occurrence. Id. at 265-66. Indeed, in Alcorn v. Vaksman, 877
S.W.2d 390, 403-04 (Tex. App.--Houston [1st Dist.] 1994, writ denied), and Harrison v.
Texas Dep't of Criminal Justice-Institutional Div., 915 S.W.2d 882, 888 (Tex. App.--Houston [1st Dist.] 1995, no writ), the same court that decided Bagg noted that although
there may not be a cause of action for damages, a plaintiff whose constitutional rights have
been violated may sue for equitable relief. See also Texas State Employees Union v.
Texas Workforce Comm'n, 16 S.W.3d 61, 66-67 (Tex. App.--Austin 2000, no pet.);
University of Texas System v. Courtney, 946 S.W.2d 464, 469 (Tex. App.--Fort Worth
1997, writ denied); Bohannan v. Texas Bd. of Criminal Justice, 942 S.W.2d 113, 118 (Tex.
App.--Austin 1997, writ denied).

 The trial court had jurisdiction to consider Rao's request for equitable relief. Tech's
first issue is overruled.

Failure to State Reasons for Issuance

 In pertinent part, Rule of Civil Procedure 683 provides that every order granting an
injunction or restraining order "shall set forth the reasons for its issuance; shall be specific
in terms; [and] shall describe in reasonable detail and not by reference to the complaint
or other document, the act or acts sought to be restrained . . . ." Under its second issue,
Tech's challenge is limited to the asserted failure of the temporary injunction to set forth
the reasons for its issuance. In the order granting the temporary injunction, the trial court
found that Rao "tendered evidence of imminent harm, irreparable injury and an inadequate
legal remedy."

 In advancing its challenge, Tech points out the admonition in Interfirst Bank San
Felipe, N.A. v. Paz Construction Company, 715 S.W.2d 640 (Tex. 1986), that the
"requirements of Rule 683 are mandatory and must be strictly followed." Id. at 641. 
Particularly citing Northcutt v. Warren, 326 S.W.2d 10 (Tex. Civ. App.--Texarkana 1959,
writ ref'd n.r.e.), and University Interscholastic League v. Torres, 616 S.W.2d 355, 358
(Tex. Civ. App.--San Antonio 1981, no writ), Tech contends that the reasons stated by the
trial court for its issuance of the temporary injunction were mere conclusory statements and
were insufficient to comply with Rule 683 requirements of specificity.

 Rao responds that this question was not preserved for appellate review because
Tech never made any trial court complaint on the basis it now raises. In relevant part,
Texas Rule of Appellate Procedure 33.1(a) provides that as a prerequisite to presenting
a complaint for appellate review, the record must show that the complaint was timely
presented to the trial court with sufficient specificity to make the trial court aware of the
grounds for complaint unless the specific grounds were apparent from the context. At the
injunction hearing, no presentation or objection was made to the temporary injunction on
the basis now raised by Tech.

 There is a split of authority on the question of whether a party can waive the right
to complain of a failure of a temporary injunction to comply with Rule 683. While the Texas
Supreme Court has not written on the subject, the great majority of the Courts of Appeal
who have considered the question, without a great deal of discussion, have concluded that
the instruction of the court in Paz that the requirements of Rule 683 are mandatory means
that the right to make appellate complaint of a failure to strictly comply with the rule is not
waived by the failure to make a trial court complaint on that basis. See Big D Properties,
Inc. v. Foster, 2 S.W.3d 21, 23 (Tex. App.--Fort Worth 1999, no writ), and 360 Degree
Communications Co. v. Grundman, 937 S.W.2d 574, 575 (Tex. App.--Texarkana 1996, no
writ). 

 However, in Emerson v. Fires Out, Inc., 735 S.W.2d 492 (Tex. App.--Austin 1987,
no writ), an appeal from the grant of a temporary injunction, the court noted that the
general principles of sound judicial administration would appear to require that any
objections to the form and content of an injunction be pointed out to the trial court at a time
when the errors could be corrected. It further observed that "[i]t serves no good purpose
to permit appellants to lie in wait and present this error in form for the first time on appeal." 
Id. at 494. Applying Texas Rule of Appellate Procedure 52(a), the progenitor of present
Rule 33.1(a), the court held that the failure to make a trial objection to the form of the
injunction waived the right to an appellate complaint on that basis. Id. at 493-94. We
agree with that reasoning.

 Bottomed on its premise that its right to complain was not waived, Tech also argues
that the trial court's stated reasons for issuing the injunction were not sufficiently specific
to meet the requirements of Rule 683. In doing so, it cites and relies upon University
Interscholastic League v. Torres, 616 S.W.2d 355 (Tex. Civ. App.--San Antonio 1981, no
writ). In that case, the court opined that a recitation of "no adequate remedy at law" and
"irreparable harm" was conclusory and not sufficient to comply with Rule 683. Id. at 358. 
 However, in the recent case of Pinebrook Properties, Ltd. v. Brookhaven Lake Prop.
Owners Ass'n, 77 S.W.3d 487 (Tex. App.--Texarkana 2002, pet. denied), the court held
that a recitation of the reasons an injunction issued was because the defendants had no
adequate remedy at law, the rights involved were unique and irreplaceable, and money
damages would not be a sufficient remedy were sufficient to meet Rule 683 requisites. Id.
at 504-05. We agree with that holding. The reasons listed in the injunction before us are
very similar to those before the Pinebrook court and are sufficient to comply with Rule 683.
For the above reasons, Tech's second issue is overruled.

Failure to Establish Probability of Recovery


 To be entitled to a temporary injunction, an applicant must show a probable injury
and a probable right to recover at the final hearing. Walling v. Metcalfe, 863 S.W.2d 56,
57 (Tex. 1993). The decision to grant or deny a temporary injunction will only be reversed
on a showing of an abuse of discretion. Anderson Chemical Company, Inc. v. Green, 66
S.W.3d 434, 437 (Tex. App.--Amarillo 2001, no pet.). A trial court abuses its discretion
when it misapplies the law to the facts or when the evidence does not reasonably support
the findings. Id. In making our review, we draw all legitimate inferences from the
evidence in the light most favorable to the trial court's judgment. Id. Where, as here, the
trial court made no findings of fact and conclusions of law, the judgment may be upheld
on any legal theory supported by the evidence. Id.

 Tech argues that the injunction was improperly entered because there is no
evidence showing that Rao was expelled for having engaged in protected speech. In
relevant part, article I, section 8 of the Texas Constitution provides: "Every person shall
be at liberty to speak, write or publish his opinions on any subject . . . ." Those free
speech rights are greater than those protected by the First Amendment to the United
States Constitution. See e.g., Davenport v. Garcia, 834 S.W.2d 4, 10-12 (Tex. 1992);
Alcorn v. Vaksman, 877 S.W.2d at 401. The Texas Constitution, in positive terms,
guarantees that every person has the right to speak, write, or publish their opinion on any
subject, while the Federal Constitution expresses First Amendment rights in negative terms
and simply restricts governmental interference with such freedoms. Jones v. Memorial
Hosp. System, 746 S.W.2d 891, 893 (Tex. App.--Houston [1st Dist.] 1988, no writ). Even
though a difference exists between the two guarantees, federal cases have historically
been looked to by Texas courts as an aid in determining free speech questions. The
reasoning of the Texas courts being if the evidence is sufficient to show a violation of
federal standards, it must also be sufficient to show a violation of state guarantees. See
e.g., Vaksman, 877 S.W.2d at 401.

 Whether speech addresses a matter of public concern is determined by the content,
form, and context of the speech. Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684,
1690, 75 L.Ed.2d 708 (1983). When the speech relates to any matter of political, social,
or other concern to the community, it addresses a matter of public concern and it is not
necessary that the speech allege a breach of public trust. Id. 461 U.S. at 146. Indeed, the
Supreme Court has held that a public employee's comment in regard to an attempt upon
the life of the President of the United States to the effect that if another attempt was made
to assassinate the President, ". . . I hope they get him," was a comment about a matter of
public concern. Rankin v. McPherson, 483 U.S. 378, 386-87, 107 S.Ct. 2891, 2898, 97
L.Ed.2d 315 (1987).

 In Mt. Healthy City Sch. Dist. Bd. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d
471 (1977), a school district had failed to rehire a non-tenured teacher because of, among
other things, a telephone call made to a local radio station. The Court set out the
standards by which an individual's entitlement to constitutionally protected free speech
would be determined. Under that test, the individual must have shown (1) his conduct was
protected, and 2) his conduct was a motivating factor in the action for which he seeks
relief. Id. 429 U.S. at 287. 

 We agree with Tech that for Rao's speech activities to be constitutionally protected,
they must have addressed a matter of public concern. Id. His column was printed in the
university newspaper, a publication which the trial judge could reasonably conclude was
of general circulation. Further, the column dealt with forensic pathology and medical
technique, matters which the trial judge could reasonably conclude were of public interest
and concern. Additionally, the record reveals that Dr. Spencer's complaint was fact
intensive in the sense that it was directed at the references made by Rao in the column.

 While it is true that certain conduct might be proscribed that has an incidental
limitation on speech, such a proscription must further an important public interest, be
unrelated to a general suppression of free speech, and be no greater than necessary to
the furtherance of that interest. See e.g.,United States v. O'Brien, 391 U.S. 367, 385, 88
S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968) (finding valid a federal law criminalizing the
destruction or mutilation of a draft registration against a First Amendment challenge). 
Under the testimony here, the trial judge could reasonably conclude Rao's conduct did not
fit within those incidental limits. Viewed in the light by which we must view it in this limited
interlocutory appeal, we cannot say the trial judge abused his discretion in granting the 
temporary injunction. Tech's third issue is overruled.

Over Broad

 We must next consider Tech's fourth issue in which it contends the temporary
injunction is overly broad. In presenting this issue, Tech avers that paragraphs 8(d), 8(e),
and 8(l) are overly broad. In paragraph 8(d), and in relevant part, Tech is enjoined from
making, condoning, or permitting "any statements to the effect that Rao has been expelled
from the curriculum, that he has committed any conduct worthy of expulsion, or that he
should be expelled from the curriculum." Paragraph 8(e), in relevant part, provides that
Tech "shall not make - or condone or permit any faculty, staff or member of the
administration to make - any statements to the effect that Rao's autopsy article reveals that
he lacks a moral compass or has a broken moral compass." In relevant part, paragraph
8(l) provides that Tech "shall not do any thing, or make any oral or written statement, that
would have the effect of interfering with Rao's ability to sit for any other examinations -licensing or otherwise - or interfering in any manner with Rao's participation in the medical
school curriculum pending the trial of this cause."

 Tech argues the above provisions are so broad and subject to subjective
interpretation that "they virtually deprive" Tech of reasonable notice of what it is prohibited
from doing. In particular, it reasons that to be enjoined from making statements "to the
effect" that Rao lacks a moral compass "could include almost any negative statement
regarding Rao." It also posits that to be enjoined from making any statement or doing
anything that would have the effect of interfering "in any manner" with Rao's participation
in the medical school curriculum "is so broad that it could include acts or statements that
no reasonable person could anticipate as being embraced within the scope of the order." 
Accordingly, it argues, in those regards, the acts proscribed in the injunction are not
sufficiently specific.

 We agree that in certain aspects, the injunction is over broad and should be
modified (3) in the following respects: 

 Paragraph 8 is modified to read as follows:


 d. Texas Tech shall not make any statements that Rao has been expelled
from the curriculum or that he has committed any conduct worthy of
expulsion. This is not intended, and shall not be construed as limiting the
Defendant's handling and defense of this litigation.


 e. This subparagraph is deleted from the injunction.


 l. Pending the trial of this cause, Texas Tech will allow Rao to sit for
examinations - licensing or otherwise - customarily incident to Rao's studies
pending the final disposition of this cause and will allow him to participate in
the medical school curriculum pending such trial.


To the extent we have modified the temporary injunction, Tech's fourth issue is overruled.

 In summary, all of Tech's issues are overruled, with the exception that its fourth
issue is granted to the extent of the modification of paragraph 8 set out above. 
Accordingly, with the exception of the modification we have set out, the judgment of the
trial court is affirmed. 


 John T. Boyd

 Senior Justice


Quinn, J., not participating.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Attending an autopsy is part of the medical school curriculum.
3. Tex. R. App. P. 43.2(b).