

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00097-CV

DIANE BEALL, Appellant

V.

ROBERT RUSSELL, FRANK RUSSELL, DOROTHY RUSSELL, THOMAS JONES,
TERESA BEALL, EDWARD BEALL, AND JOANIE JONES, Appellees

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 14-0718

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Diane Beall, acting pro se, appeals a September 2021 judgment adopting a report of commissioners appointed to partition undivided interests in a tract of land situated in Harrison County, Texas (the Property).[1]  Unfortunately for Diane, the matters she asserts on appeal all were decided in the trial court's initial decree of May 2020, which was not timely appealed. Because the issues raised in this appeal have either been finally decided by the trial court's initial decree directing partition, which was a final, appealable order that was not timely appealed, we overrule all of Diane's points on appeal and affirm the trial court's judgment.

---

[1]The Property is more fully described as:

> All that certain lot, tract, block or parcel of land situated in the J. C. Ellison Survey (A-228) being a portion of the residue of that certain called 75.5 acre tract conveyed by J. D. Lovelace and wife, Claudia Lovelace to Harry Russell by Deed dated December 15, 1917 recorded in Volume 89, Page 609 of the Deed Records of Harrison County, Texas, the residue of said tract being found by actual survey to contain 77.785 acres and this portion thereof having been established as Fourth Tract in that certain Report of Commissioners filed in the Deed Records of Harrison County, Texas, at Volume 971, Page 474, being more particularly described therein as follows:
>
> BEGINNING at a point for the NEC, said point being in the NBL of said 77.785 acre tract a distance of 2109.42' West from the NEC of said 77.785 acre tract and also being at the NWC of Tract No. 3 described in that certain Report of Commissioners filed in the Deed Records of Harrison County, Texas, at Volume 971, Page 474;
>
> THENCE South along the WBL of said Tract No. 3 a distance of 1007.07' to a point for the SEC, said point being the NEC of Tract No. 5 described in that certain Report of Commissioners filed in the Deed Records of Harrison County, Texas, at Volume 971, Page 474;
>
> THENCE West along the NBL of said Tract No. 5 a distance of 590' to a point for the SWC, said point being the NWC of said Tract No. 5 and also being in the WBL of said 77.785 acre tract;
>
> THENCE North 3 Deg. 45 Min. W along the WBL of said 77.785 acre tract a distance of 1009.23' to an iron pipe set for the NWC, said corner also being the NWC of the said 77.785 acre tract;
>
> THENCE East along the NBL of said 77.785 acre tract a distance of 656' to the POINT OF BEGINNING and containing an area of 14.403 acres of land, more or less.
>
> LESS AND EXCEPT that certain .500 acre tract conveyed out of the North East corner of the above described 14.403 acres of land, more or less, previously conveyed to Thomas Jones, Jr., by Correction Deed from the parties hereto, recorded in the Official Public Records of Harrison County Texas as Document Number 2011-000013348 on November 4, 2011. Also being more particularly described therein as surveyed in Plat "A" ("the Land").

In 2014, Robert Russell, Frank Russell, and Dorothy Russell (collectively the Russells) filed suit seeking partition of the Property from co-owners Diane, Teresa Beall, Margerett Ann Beall, David Beall, Edward Beall (collectively the Bealls); Thomas Earl Jones, Michelle Jones Montgomery, Joanie Jones Evans, Tony Jones, Sherron Ann Jones (collectively the Joneses); and Onita Gistene Suttle.

On January 4, 2016, the Russells' counsel filed an unsworn declaration explaining the efforts that had been made to locate Diane, including sending requests for disclosure to family members, hiring a private investigator to determine her whereabouts, attempting to serve her personally at several different addresses provided through internet searches and family members, and exchanging text messages with Diane asking her to provide an address.[2]  Pursuant to a March 19, 2018, application for citation by publication, Diane was served by publication, but never answered or made an appearance in the trial court.

In Diane's absence, the trial court appointed an attorney ad litem to represent her, and the case was tried in May 2018.[3]  The trial court found that the parties were co-tenants and the sole owners of the Property, that Robert had an undivided one-third interest in the Property, that Frank and Dorothy had an undivided one-sixth interest in the Property, that the Bealls and Suttle had an undivided one-thirty-sixth interest in the Property, and that the Joneses had an undivided one-thirtieth interest in the Property.  The trial court further found that the Property was

---

[2]Counsel's declaration included "non-service notices" documenting sheriff attempts at serving Diane at various addresses, as well as a returned certified mail card showing that Diane could not be served at the address provided by her brother, David.

[3]No reporter's record from this trial was provided to this Court.

susceptible to fair and equitable partition in kind between the parties to reflect their respective interests.

The parties, except for Diane, Tony, David, and Evans, agreed that the Property would be partitioned in accordance with a map that divided the Property into five tracts of land. Pursuant to the proposed map, Tract 1 represented Dorothy's in-kind interest, Tract 2 represented the Bealls' and Suttle's interests, Tract 3 represented the Joneses' interests, Tract 4 represented Frank's interest, and Tract 5 represented Robert's interest. As a result, "based on the agreement of the majority of the parties," on May 20, 2020, the trial court entered an initial decree directing partition and appointing commissioners to examine the interests of the five tracts as reflected on the agreed map. The commissioners were to value those new interests and "properly adjust the equities in keeping with the improvements."[4]

After the trial court's initial decree, each tract was surveyed and examined by the commissioners, who issued a report on February 2, 2021. The Commissioners' Report included the legal description of each tract of land and, after suggesting certain easements, concluded that partition of the Property into the suggested five tracts was "fair, correct and in accordance with the requirements of the Decree." On September 2, 2021, the trial court held a hearing, after which it entered a judgment adopting the Commissioners' Report and partitioning the Property into the five designated tracts.[5] Diane appeals from the September 2021 judgment.

---

[4]The trial court appointed commissioners Clay Allen, Misty Clark, and Garrett Allen to accomplish the task.

[5]At that hearing, the attorney ad litem said that he also could not locate Diane's physical address but that Diane had reached out to him and that he had advised her to seek other counsel and enter an appearance. The attorney ad litem added that he had sent Diane the Commissioners' Report and the trial court's orders but did not specify how the documents were sent.

"It is important to note at the outset that a partition case has two final judgments and that both are appealable as a final judgment." *Woodland v. Wisdom*, 975 S.W.2d 712, 714 (Tex. App.—Texarkana 1998, no pet.) (citing *Griffin v. Wolfe*, 610 S.W.2d 466, 466 (Tex. 1980)); *see Little ex rel. Thompson v. Thompson*, No. 12-01-00283-CV, 2002 WL 1017847, at *2 (Tex. App.—Tyler May 14, 2002, pet. denied) (mem. op.) (per curiam); *Bierschwale v. Bode*, 755 S.W.2d 562, 564 (Tex. App.—San Antonio 1988, no writ). "Initially, the court must determine the share or interest of each of the joint owners or claimants, and all questions of law or equity affecting title to such land which may arise." *Little ex rel. Thompson*, 2002 WL 1017847, at *2 (citing TEX. R. CIV. P. 760). "Whether the property is ordered sold or partitioned in kind, a second order is necessary to confirm the action taken." *Id.*

"The trial court's initial decree determining partitionability and appointing commissioners, although often referred to as an interlocutory decree, is a final and appealable order [that] is conclusive of all matters decreed within it." *Woodland*, 975 S.W.2d at 715 (citing *Yturria v. Kimbro*, 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi 1996, no writ) ("In addition to determining the basic issues of partitionability in kind and the fractional interests of the parties, the trial court also has the power during the initial stage of the partition proceeding to adjust all equities between the parties.") (citing *Griffin*, 610 S.W.2d 466; *Rayson v. Johns*, 524 S.W.2d 380, 382 (Tex. App.—Texarkana 1975, writ ref'd n.r.e.)); *see Little ex rel. Thompson*, 2002 WL 1017847, at *2 ("The court's preliminary decree determining the matters set forth in rules 760, 761 and 770 is a final, appealable order and is conclusive of all matters covered."). "Thus, the court's preliminary decree must be appealed within the time prescribed in the Texas

5

Rules of Appellate Procedure." *Little ex rel. Thompson*, 2002 WL 1017847, at *2. "If the first decree is not appealed, the matters determined by the decree are res judicata and may not be reviewed in an appeal from the second decree." *Id.* (citing *Ellis v. First City Nat'l Bank*, 864 S.W.2d 555, 557 (Tex. App.—Tyler 1993, no writ); *Marmion v. Wells*, 246 S.W.2d 704, 705 (Tex. App.—San Antonio 1952, writ ref'd)); *see Bierschwale*, 755 S.W.2d 564 ("When the first decree has not been appealed from, the matters determined therein are not reviewable in an appeal from the second or final decree, and the parties are bound by res judicata.").

The trial court's initial decree directing partition, which also determined each person's undivided interest in the Property, was entered on May 5, 2020, and was never appealed. In her appeal, Diane argues, among other things, that (1) the partition suit is inexplicable and frivolous; (2) she was denied her inherited ownership of the Property; (3) there was evidence of fraud, forgeries, slander, and neglect; (4) the value of the five tracts of land is unknown, and (5) she is not sure how Edward's share of the Property was calculated.[6] Because all the matters raised by Diane in her brief were decided in the trial court's final initial decree, which was not appealed, we may not review those matters in an appeal from the September 2021 judgment.[7] Consequently, we overrule all of Diane's points of error.

---

[6]Diane's brief includes many arguments that are not supported by the appellate record. She also attached documents outside of the appellate record. "[W]ith limited exceptions not material here, an appellate court may not consider matters outside the appellate record." *Merch. Ctr., Inc. v. WNS, Inc.*, 85 S.W.3d 389, 394 (Tex. App.—Texarkana 2002, no pet.) (citing *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840 (Tex. 1979) (per curiam)).

[7]Diane also complains of the entry of default judgments by stating, "opposing counsel's main argument that [she] . . . intentionally 'hid' from process-services . . . is unintuitive." The brief states, "At the time process-services were being sent, I was being stalked, hacked, and [had] mail stolen." Even so, Diane admitted that she was notified by phone of the partition suit, acknowledged that she had email communications with the Russells' counsel and the attorney ad litem in 2018, and confirmed that she was emailed the May 2018 trial notice before the trial and was later sent the trial court's 2020 initial decree. Here, nothing shows that Diane, who had actual knowledge of the

We affirm the trial court's September 2021 judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted: June 8, 2022
Date Decided: July 5, 2022

---

proceedings, was not duly cited by publication, as reflected in the decree. Yet, she did not appeal the trial court's initial decree.